**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
 *kevin@kjclawgroup.com*
W. Blair Castle (SBN 354085)
 *blair@kjclawgroup.com*
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797

Attorneys for Plaintiff
*Anna Fischer*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA FISCHER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LAIRD SUPERFOOD, INC., a Nevada corporation; and DOES 1 to 10, inclusive, <br><br> Defendants. | CASE NO. <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> 1. **Unjust Enrichment;** <br> 2. **Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200,** *et seq.***; and** <br> 3. **Violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750,** *et seq.* <br><br> <u>Filed Concurrently:</u> <br><br> 1. Plaintiff's CLRA Venue Affidavit <br><br> (JURY TRIAL DEMANDED) |

Plaintiff Anna Fischer ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge

-1-

as to herself, on the investigation of her counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this Complaint, after a reasonable opportunity for discovery.

## NATURE OF ACTION

1.     This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Laird Superfood, Inc. ("Laird Superfood" or "Defendant"), arising from its use of surreptitiously tacking on junk fees, including a "Carbon Offsets & Shipping Protection" fee, on all orders placed on its website without consumers' consent.

2.     When consumers make a purchase through Laird Superfood's website, they browse products, select items from the online store, add them to their cart, and enter their billing and shipping information. Up until this point, this is all standard for an online purchasing experience. However, Laird Superfood vastly diverts from the standard experience by secretly tacking on a so-called "Carbon Offsets & Shipping Protection" fee, which is an additional charge that is automatically added to all orders.

3.     Never do consumers affirmatively choose to add the "Carbon Offsets & Shipping Protection" fee to their shopping cart. Instead, Laird Superfood secretly adds this fee without consumers' consent right before the purchase is complete.

4.     Automatically sneaking in this fee is what the FTC has deemed as a "Digital Dark Pattern," designed to trick or manipulate consumers into making choices that they might not otherwise have made.

5.     As discussed below, sneaking in the "Carbon Offsets & Shipping Protection" fee is deceptive and unfair for several reasons: (a) Laird Superfood automatically adds this fee to consumers' carts without their permission and does not disclose this added fee until the very last step in the multi-step purchasing process (or worse, only when it sends a confirmation email to the consumer); (b)

the fee itself is deceptively named and described, and does not provide any "protection" benefits to consumers that they are not already entitled to as a matter of law; and (c) the fees are nothing more than an additional cost for shipping, rendering Laird Superfood's promise for "free shipping" false.

6.    Laird Superfood hides, disguises, and fails to divulge that a "Carbon Offsets & Shipping Protection" fee will be automatically added to all orders to deceive consumers into purchasing it, allowing it to unjustly benefit from pushing its delivery obligations and costs onto consumers.

7.    Automatically adding additional products or services to online shopping carts without explicit consumer consent is a deceptive practice.

8.    Laird Superfood omits and conceals material facts about purchasing items on its website, never once informing consumers in any disclosure, at any time, that the so-called "Carbon Offsets & Shipping Protection" fee will be automatically and surreptitiously added to all orders.

9.    Despite its own responsibilities to ensure the care and delivery of the products it sells and ships to consumers until they are delivered, Laird Superfood utilizes deceptive tactics to foot the bill on its customers, tricking them into paying for services already provided and forcing them to subsidize Laird Superfood's delivery liabilities and customer support costs, despite promising free shipping, all to the benefit of Laird Superfood's bottom line.

10.    Thousands of Laird Superfood customers like Plaintiff have been assessed a hidden fee for which they did not bargain, and for which they derived no benefit.

11.    Consumers like Plaintiff reasonably understand Laird Superfood's advertised price to disclose the total cost they will pay for their products, as well as the costs of delivery, including any related costs associated with loss, damage or theft of their purchase in transit.

12.    By unfairly obscuring its addition of a "Carbon Offsets & Shipping

Protection" fee to consumers shopping carts, Laird Superfood deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true prices and fees.

13.    Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay Laird Superfood's surreptitiously added-on fee.

## THE PARTIES

14.    Plaintiff Anna Fischer is a citizen of the State of California and resident of Los Angeles County.

15.    Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant Laird Superfood, Inc. is a Nevada corporation with its principal place of business in Colorado.

16.    Plaintiff does not know the true names or capacities of the persons or entities sued as DOES 1 to 10, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged in this Complaint. Defendants shall together be referred to as "Defendants" or "Laird Superfood."

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

18.    The Central District of California has specific personal jurisdiction over Laird Superfood. Specific jurisdiction over a non-resident defendant exists

where: (1) "[t]he non-resident defendant . . . purposefully direct[s] [it]s activities or consummate[s] some transaction with the forum or resident thereof; or perform[s] some act by which [it] purposefully avails [it]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) the claim is one that "arises out of or relates to" the defendant's activities in the forum state; and (3) the exercise of jurisdiction comports with "fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff need only establish the first two prongs, while it is the defendant's burden to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

19. ***Purposeful Availment.*** Under the first prong of the three-part test, "purposeful availment" includes both purposeful availment and purposeful direction, which are two distinct concepts. *Id.* Where a case sounds in tort, as here, courts employ the purposeful direction test. Purposeful direction requires the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citing *Schwarzenegger*, 374 F.3d at 802). On information and belief, Laird Superfood regularly sells and ships its products to customers in California, including Plaintiff, who purchased the Product from a grocery store in Los Angeles County, California. On further information and belief, Laird Superfood sells its products in grocery stores all throughout California. In addition, because Defendant does a substantial amount of business in California, it is knowingly employing a false marketing scheme directed at and harming California residents, including Plaintiff.

20. ***Claim Arising Out of Action in the Forum Prong.*** Under the second prong of the three-part specific jurisdiction test, personal jurisdiction exists where, as here, the claim "arises out of or relates to" the defendant's activities in the forum state. Courts in the Ninth Circuit use a "but for" test to determine whether the claim

"arises out of" the nonresident's forum-related activities. In other words, the test is satisfied if the plaintiff would not have suffered loss "but for" defendant's activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, Laird Superfood's contact with the forum—knowingly employing a false marketing scheme directed at California residents—is the basis of its violations of various false advertising statutes. But for Laird Superfood's contact with the forum, Plaintiff (and the thousands of other individuals who purchased Laird Superfood's deceptively advertised products) would not have suffered harm.

21. **Venue.** Venue is proper in the U.S. District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because Laird Superfood:

    a)    is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District;

    b)    does substantial business within this District;

    c)    is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## GENERAL ALLEGATIONS

### A.    Overview of Laird Superfood

22. Laird Superfood is a plant-based superfood brand. Laird Superfood sells its products both through its own online website and in major retail stores such as Target. This case concerns the "Carbon Offsets & Shipping Protection" fee added to purchases made directly on Laird Superfood's website.

23. At no point in the purchasing process are consumers asked to assent to Laird Superfood's Terms of Use.

### B.    Laird Superfood Surreptitiously Adds Fees to Consumers' Carts

24. This is how Laird Superfood's deception works. When a consumer visits lairdsuperfood.com and selects a product to purchase, Laird Superfood

informs the consumer that orders over $70 are entitled to free shipping:



25.    When a consumer clicks the large red "BUY NOW" button, the shopping cart is automatically displayed on the side of the webpage. The consumer's cart is riddled with deception. Laird Superfood sneaks in, in much smaller writing than the large red button screaming "CHECKOUT +," a fee for "Checkout+." On information and belief the added fee amounts to a percentage of the transaction. The fee is added without the consumer having done anything at all to add the fee. What's worse, the optional hyperlink to "Continue Without Checkout+" is so tiny and in such light print as to blend in with the white background, and it is intentionally designed to go unnoticed by consumers like Plaintiff, who did not notice the fee. Thus, if consumers even notice the very small amount added to their transactions, consumers are still left entirely unaware that the Carbon Offsets & Shipping Protection charge is optional, because it is presented

in the cart as mandatory:



26.    If a consumer selects the large red "Checkout+" button, which the consumer is likely to do for the reasons explained above, the consumer is then taken to the checkout page where the "Carbon Offsets & Shipping Protection" fee is presented in the cart:

(image on next page)

-8-

CLASS ACTION COMPLAINT

27.    If a consumer scrolls down on the checkout page, the option to untoggle the fee that has already been added to the cart is small and deceptively formatted, again in hopes that consumers will not notice the added fee:

(image on next page)





28.    Thus, reasonable consumers believe that they have no choice but to pay the add-on fee, which they were never previously informed of. This is a classic bait & switch.

29.    Many consumers do not notice that an additional fee is being added to their order. Others believe that they have no choice but to pay this fee.

30.    This pre-selection of automatically sneaking junk fees into consumer orders is deceptive and unlawful. Imagine a scenario in which a consumers goes to the grocery store, and the cashier secretly scans an extra small item during checkout

CLASS ACTION COMPLAINT

and places it in the customer's cart without the customer noticing. What happened to Plaintiff during the online checkout process is no different.

31.    As the FTC notes, "For years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find- and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers*, September 15, 2022 (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers). The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing that* ***"[a] 'pre-checked box' does not constitute affirmative consent."*** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added).

32.    This method of adding on fees is designed to go undetected by consumers and thus provide additional revenue to Laird Superfood. The Wall Street Journal recently highlighted the problem, stating:

> Some brands automatically add optional coverage to orders. ***Customers have complained the fees are disclosed in small fonts, made to appear mandatory when they are not or are displayed late in the online checkout process.***

Imani Moise, *Porch Pirates Are Now Raising the Price You Pay at Checkout*, Wall Street Journal, December 25, 2024, available at https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34 (emphasis added).

33.    Upon information and belief, Laird Superfood is aware that by designing its website to automatically opt in consumers to "package protection" fees, most consumers will unknowingly purchase the "protection." On information and belief, Laird Superfood is also aware that had it designed its website to offer *optional* "protection," by requiring that consumers affirmatively add the protection

to their orders, the vast majority of consumers would not purchase it.

34.    Because Laird Superfood's practice is deceptive, Shopify, which handles the technology infrastructure for many direct-to-consumer brands and other ecommerce businesses, told merchants that automatically adding discretionary charges at checkout will be banned starting in February of 2025.

35.    The ban is too little, too late to help the thousands of consumers like Plaintiff who have been deceived.

**C.    The Add-On Fees Render Promises of Free Shipping False.**

36.    In addition to the deceptive way that Laird Superfood sneaks fees into consumers' carts, the fees are also deceptive because they directly contradict other promises on Laird Superfood's website regarding "free" shipping. This is because Laird Superfood's add-on fees are really just disguised shipping charges.

37.    As described herein, Laird Superfood promised "free" shipping on certain orders. This was a clear promise that the total, marginal cost of having products shipping to the consumer was represented by the "free" shipping promises. Laird Superfood tacks on the added "Carbon Offset & Shipping Protection" fee despite its free shipping promise.

38.    Laird Superfood realized it could charge customers more for shipping without them realizing, thereby increasing profitability, by misrepresenting the true shipping costs to consumers.

39.    Laird Superfood was or should have been aware that consumers were and would be deceived by a shipping fee surreptitiously added to the order while simultaneously promising "free" shipping.

40.    By deceptively obscuring charges, Laird Superfood deceives consumers and gains an unfair upper hand on competitors.

**D.    Defendant's "Shipping Protection" Fee Is Deceptive Because it Provides No Added Value to Consumers.**

41.    Beyond the deceptive manner in which the fees are added and the fact

that fees render Laird Superfood's "free" shipping promise false, the "Carbon Offset & Shipping Protection" fee is also deceptively named and described.

42.    First, the fee provides little or no *additional* "protection" for shipments. Online retailers like Laird Superfood already provide replacements and allow for returns of products. Specifically, Laird Superfood offers 30-day returns on its website for all items. *See* https://support.lairdsuperfood.com/hc/en-us/articles/21127810310541-Return-Policy. Therefore, the add-on fee provides no extra protection for goods that arrive damaged. Laird Superfood misrepresents and omits material facts about that truth.

43.    Moreover, popular shipping services like UPS, Federal Express, and USPS Priority Mail *automatically* include shipping protection for the first $100 worth of value in a package when goods are not delivered, are stolen, or are damaged. Defendant misrepresents and omits material facts about that truth. Thus, for the vast majority of consumers, those who are paying to ship a product less than $100, the add-on fee is entirely worthless because they are already provided the same protection by the shippers.

44.    Additionally, in the event goods are not delivered, are stolen, or are damaged, consumers can report the issue to their credit card company or bank, who will often reverse the charge.

45.    For all these reasons, the "Carbon Offset & Shipping Protection" fee is deceptively named and described. No reasonable consumer would knowingly elect to pay for the add-on fee, because it provides no additional value to consumers.

E.    **Defendant's Fees are Junk Fees That Violate Federal Guidance and California Law.**

46.    Laird Superfood's shipping fees, such as the "Carbon Offset & Order Protection" fee, are precisely the type of "junk fees" that have triggered government scrutiny in recent  years:

-13-

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition.

47.    As the Federal Trade Commission said recently in its effort to combat junk fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed Rule Would Prohibit Hidden and Falsely Advertised Fees, October 11, 2024, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

48.    In July of 2024, California expanded its Consumer Legal Remedies Act ("CLRA") to expressly make illegal "drip pricing," which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the new California law, it is illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." See California Department of Justice, Office of the Attorney General, SB 478 Frequently                 Asked                 Questions,                 available                 at

-14-

https://oag.ca.gov/system/files/attachments/pressdocs/SB%20478%20FAQ%20%

28B%29.pdf (last accessed July 18, 2024). As the California Department of Justice

stated:

> Businesses are free to explain how they set their prices or to
> *subsequently* itemize the charges that make up the total price that they
> charge customers. However, the price they advertise or display must be
> the total price that customers will have to pay for the good or service.
> Knowing the price of a good of service is essential to
> competition, and displaying a price that is less than what the customer
> will actually be charged is deceptive.

*Id.* at p.4 (emphasis added).

49.     In its 2013 publication ".com Disclosures: How to Make Effective

Disclosures in Digital Advertising," the FTC makes clear that when advertising and

selling are combined on a website, and the consumer will be completing the

transaction online, the disclosures should be provided before the consumer makes

the decision to buy – for example, before the consumer "add[s] to shopping cart."

See Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures

in Digital Advertising at ii, 14 (Mar. 2013), available

at     https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-

revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

50.     Defendant violates federal guidance and California law by adding the

shipping fees as line items well after the consumer "add[s] to shopping cart" and

by failing to disclose the nature of these fees.

**F.    Plaintiff's Experience**

51.     Plaintiff used the Laird Superfood website to place an order for a

Protein Bar Variety Pack (10pck) – 10 Pack and a bag of Prebiotic Daily Greens

on September 14, 2025.

52.     When using the website, Plaintiff was repeatedly informed that she

would get free shipping as part of her purchase. Plaintiff justifiably relied on this

promise when choosing to make a purchase over $70.

53.     However, unbeknownst to Plaintiff, Plaintiff's purchase included a

surreptitious "Carbon Offset & Shipping Protection" fee amounting to $2.24 that—for the reasons described above—in fact represented an additional fee tacked on to Plaintiff's order for a product that provided no additional benefit to Plaintiff.

54.    On information and belief, Plaintiff viewed a screen flow similar to the screen flow depicted above, or a screen flow containing even more deceptions concerning the Carbon Offset & Shipping Protection fee. The precise screen flow viewed by Plaintiff is in Defendant's custody and control and can obtained in discovery.

55.    Plaintiff did not know the charge existed or could be removed prior to completing her purchase.

56.    Plaintiff would not have made these purchases if she had known that Laird Superfood would tack on additional fees or if she had known that she would be made to pay extra for services already owed to her by virtue of the transaction.

57.    If she had known the true cost of her orders and that Laird Superfood was trying to extract additional payment from her hoping that she wouldn't notice, she would have chosen another method or merchant for ordering her foods.

58.    As a result of Defendant's deceptive addition of worthless fees, Plaintiff overpaid for her Laird Superfood purchase.

## CLASS ACTION ALLEGATIONS

59.    Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

All consumers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered products from Laird Superfood and were assessed a so-called Carbon Offset & Shipping Protection fee or similar fee (the "Class").

60.    The above-described class of persons shall hereafter be referred to as

the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

61.     In the alternative, Plaintiff seeks certification of the following class pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure:

> All consumers in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered products from Laird Superfood and were assessed a so-called Carbon Offset & Shipping Protection fee or similar fee (the "Class").

62.     **Numerosity**. The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Class. The precise number of Class members is unknown to Plaintiff.

63.     **Typicality**. Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendants' course of conduct as described in this Complaint. All Class members have been deceived (or were likely to be deceived) by Laird Superfood's false and deceptive junk fee scheme, as alleged in this Complaint. Plaintiff is advancing the same claims and legal theories on behalf of herself and all Class members.

64.     **Adequacy of Representation**. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff

has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and her counsel intend to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Class.

65.    **Existence and Predominance of Common Questions of Law or Fact**. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a)    Whether during the class period, Laird Superfood deceptively represented its fees for online orders;

b)    Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

c)    Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d)    Whether Defendant misrepresented that nature and/or purpose of the "Carbon Offset & Shipping Protection" fee;

e)    Whether Defendant was unjustly enriched by having consumers pay a "Carbon Offset & Shipping Protection" fee;

f)    Whether Defendant acted in bad faith when it charged a "Carbon Offset & Shipping Protection" fee;

g)    Whether Defendant violated California's Unfair Competition Law;

h)    Whether Defendant violated California's False Advertising Law;

i)    Whether Defendant violated California's Consumer Legal Remedies Act;

j)    Whether Plaintiff and members of the Class were harmed by Defendant's misrepresentations;

k)  Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

l)  Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent the amount for orders on vincecamuto.com.

66.  **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

67.  By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

68.  **Ascertainability**. Upon information and belief, Defendants keep extensive computerized records of their sales and customers through, among other things, databases storing customer orders, customer order histories, customer

-19-

profiles, customer loyalty programs, and general marketing programs. Defendants have one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

69.    The California Class also satisfies each of the class action requirements set forth above. The allegations set forth above with regards to the Class, therefore, apply equally to the California Class.

70.    The Proposed Class Satisfies the Prerequisites for Damages. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member

## CLAIMS FOR RELIEF

### First Cause of Action

### Unjust Enrichment

### (By Plaintiff Against Defendants on Behalf of Herself and the Class)

71.    To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

72.    Plaintiff and the Classes conferred a benefit on Defendant when they paid the "Carbon Offset & Shipping Protection" fee, which they did not bargain for and could not reasonably avoid.

73.    As a result, Defendant was benefited in that it was able to relieve itself of its obligations and liabilities related to the risk of loss in delivering its goods to

Plaintiff and the Classes, and the costs that would otherwise be associated with fulfilling these delivery obligations, including customer support costs.

74.    Plaintiff and the Class members received no benefit for which they were not already entitled as a result of Defendant's conduct.

75.    Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

76.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

77.    Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained profits received and/or retained by Defendant as a result of its inequitable conduct as more fully stated herein.

**Second Cause of Action**

**Violations of California's Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

**(By Plaintiff Against Defendants on Behalf of Herself and the Class)**

78.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

79.    Plaintiff brings this claim on behalf of herself and the California Subclass.

80.    Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, et seq.

81.    The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

82.    The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

83.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

84.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

85.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

86.    Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., by affirmatively and knowingly misrepresenting that the presence and nature of its "Carbon Offset & Shipping Protection" fee.

87.    Defendant's acts and practices offend an established public policy of truthful advertising and fee disclosure in the marketplace, and constitute immoral unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

88.    The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

89.    Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, et seq.

90.    Defendant's business practices have misled Plaintiff and the proposed Class and, unless enjoined, will continue to mislead them in the future.

91.    Plaintiff relied on Defendant's misrepresentations in making her purchase.

92.    By falsely marketing its products and delivery services, Defendant deceived Plaintiff and Class members into making purchases they otherwise would not make and paying more than they should have.

93.    As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived. Plaintiff desires to conduct further business with Defendant but cannot rely on Defendant's representations unless an injunction is issued.

94.    As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

95.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

96.    Plaintiff has no adequate remedy at law in part because Defendant continues to add its Route Protection Package fees to purchases. Plaintiff therefore seeks an injunction on behalf of the general public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

///

///

///

**<u>Third Cause of Action</u>**

**Violation of the California Consumers Legal Remedies Act,**

**Cal. Civ. Code §§ 1750, *et seq.***

**(By Plaintiff Against Defendants on Behalf of Herself and the Class)**

97.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

98.    The Consumer Legal Remedies Act of 1970, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA") is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

99.    Plaintiff and each member of the Class are "consumers" as defined by California Civil Code section 1761(d). Defendants' sales of chips to Plaintiff and the Class were "transactions" within the meaning of California Civil Code section 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code section 1761(a).

100.    Defendants violated and continue to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Laird Superfood's products:

(1) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

(2) "Using deceptive representations . . . in connection with . . .

-24-

services";

   (3) Advertising goods or services with the intent not to sell them as advertised.

   (4) "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges.

Cal. Civ. Code §§ 1770(a)(4),(5),(9), & (29).

101. Specifically, Laird Superfood (a) deceptively added fees into consumers' carts; (b) deceptively named and described the add-on fees; (c) charged Plaintiff and class members for shipping above and beyond what was promised to them; and (d) charged fees that provide no added value to reasonable consumers.

102. Defendant's conduct and actions are deceptive, untrue, and misleading to reasonable consumers and will continue to mislead consumers in the future.

103. Plaintiff relied on Defendant's representations in making her purchase.

104. As a result of Defendant's deceptive practices, Plaintiff overpaid for her purchase.

105. As a direct and proximate result of Defendant's misconduct, Plaintiff and the Class members have suffered and will continue to suffer damages.

106. As to this cause of action, at this time, Plaintiff seeks only injunctive relief. Pursuant to Cal. Civ. Code § 1782, in conjunction with the filing of this action, Plaintiff's counsel is notifying Defendants by separate letter of the particular violations of the CLRA and demanding that they correct or agree to correct the actions described in this Complaint. If Defendants fail to do so, Plaintiff shall amend her Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiff and the Class is entitled under the CLRA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Anna Fischer prays for relief and judgment in favor of herself and the Classes as follows:

### **On the First Cause of Action for Violations of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

A.    For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.    For an award of equitable and declaratory relief.

C.    For pre- and post-judgment interest and costs of suit incurred herein.

D.    For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

E.    For such other and further relief as the Court may deem just and proper.

### **On the Second Cause of Action for Violations of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq*.)**

A.    For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.    For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendants to correct their deceptive and misleading advertising and selling practices.

C.    For pre- and post-judgment interest and costs of suit incurred herein.

D.    For attorneys' fees incurred herein pursuant to California Civil Code section 1780, or to the extent otherwise permitted by law.

E.    For such other and further relief as the Court may deem just and proper.

1

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

DATED:  October 27, 2025

Respectfully submitted,

**KJC LAW GROUP, A.P.C.**

By: */s/ Kevin J. Cole*

Attorney for Plaintiff
*Anna Fischer*

-27-